# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1132

_____

|  |  |  |
|---|---|---|
| Donald Jones, | * | |
| | * | |
| Petitioner - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Al Luebbers, | * | |
| | * | |
| Respondent - Appellee. | * | |

_____

Submitted: April 17, 2003
Filed: March 3, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Petitioner-Appellant Donald Jones, a state prisoner under a sentence of death, appeals the district court's[1] denial of habeas relief. On appeal, Jones argues that the state trial judge who presided over his capital murder trial was biased and that his public defenders were ineffective due to their failure to secure the trial judge's

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

recusal. Because the courts of Missouri did not "make an unreasonable determination of the facts in light of the evidence presented in state court proceedings," 28 U.S.C. §2254(d)(2), nor apply "clearly established Federal law, as determined by the Supreme Court of the United States" in an unreasonable manner, 28 U.S.C. § 2254(d)(1), we affirm.

## I. Background

In 1994, a jury convicted Jones of first degree murder and armed criminal action for bludgeoning his grandmother with a knife block, stabbing her to death, stealing her money, and stealing her car and other personal property to buy crack cocaine. The jury recommended, and the trial judge imposed, a sentence of death for the murder and a sentence of life imprisonment for the armed criminal action. Because we granted a certificate of appealability only as to Jones's claims of trial court bias and ineffective representation, we address in detail only facts that are relevant to the issues of representation and bias. The Missouri Supreme Court set forth facts relevant to the underlying crime in State v. Jones, 979 S.W.2d 171, 176 (Mo. 1998) (en banc), cert. denied, 525 U.S. 1112 (1999).

Jones's case was assigned to Missouri trial judge Charles D. Kitchin on November 19, 1993. Karen E. Kraft, a managing attorney in the public defender's capital case office, represented Jones. On January 1, 1994, Ms. Kraft assigned assistant public defender Ellen A. Blau to assist in Jones's defense. On April 21, 1994, Ms. Kraft and Ms. Blau, on behalf of Jones, moved for Judge Kitchin's disqualification. They alleged that Judge Kitchin was biased against Ms. Blau and requested that a separate judge rule on the disqualification motion.

The allegations of bias stemmed from an unrelated, 1992 case before Judge Kitchin. In that case, Ms. Blau arranged for a public defender to represent a state's witness against her client after the state's witness had already pled guilty and agreed

-2-

to testify against her client. After receiving representation, the state's witness withdrew his plea and invoked his Fifth Amendment rights. Facing the loss of the witness, the state dropped the charges against Ms. Blau's client. Judge Kitchin believed that Ms. Blau's interference with the state's witness was unethical and potentially criminal. Judge Kitchin recommended that the prosecutor charge Ms. Blau with a crime and refer the matter to Missouri's attorney discipline body to investigate and sanction Ms. Blau for her role in the state's loss of its witness.

In a different 1992 case, Judge Kitchin criticized Ms. Blau's representation of a client and warned Ms. Blau that her behavior came close to suborning perjury. Finally, Ms. Kraft and Ms. Blau alleged that Judge Kitchin expressed bias against an expert witness they proposed for use in Jones's defense, psychiatrist Sadashiv Parwatikar, M.D.

Ms. Kraft and Ms. Blau did not move for disqualification until approximately five months after the initial assignment of the case to Judge Kitchin. Accordingly, Jones was not entitled to an automatic transfer to a different judge. See Mo. R. Crim. P. 32.07 (providing for an automatic change of judge upon timely application). Instead, Judge Kitchin granted a hearing on the issue of disqualification for cause and denied the request to assign another judge to preside over the disqualification hearing. At the hearing, another assistant public defender, Richard Scholz, appeared on behalf of Jones. Mr. Scholz renewed the earlier request to have a different judge preside over the disqualification hearing, but Judge Kitchin again denied the request.

During the disqualification hearing, Judge Kitchin questioned witnesses and served as a witness. Mr. Scholz's behavior at the hearing clearly angered Judge Kitchin. Judge Kitchin summarily overruled a number of Mr. Scholz's objections, ordered Mr. Scholz to remain silent, threatened to hold Mr. Scholz in contempt, and threatened to imprison Mr. Scholz for contempt. After repeatedly asking the court reporter to note Judge Kitchin's angry demeanor and hostile tone, Mr. Scholz

requested and received leave to withdraw from the case. After Mr. Scholz withdrew, Ms. Kraft assumed the role as primary counsel. When Ms. Kraft attempted to ask a particular witness whether or not he had "observed a bias on the part of Judge Kitchin" towards Ms. Blau, Judge Kitchin sustained the prosecutor's objection, repeatedly stated that he disapproved of Ms. Blau's earlier behavior, and stated emphatically that he would note the fact of his disapproval in his written order. Later, when questioned by Ms. Kraft about Ms. Blau, Judge Kitchin responded:

> There's no question I think it was a gross violation of the canons of ethics and totally improper and a total outrage that such a thing was done. I['ve] been in this business thirty years. I know of no other case where any attorney went to a state's witness [and] got the state's witness a lawyer who later told him to take the Fifth.

Judge Kitchin admitted that he discussed Ms. Blau's conduct in the earlier cases with several other judges. In his written order to deny the motion for disqualification, Judge Kitchin wrote, "The Court . . . believed then and believes now that Ellen Blau's actions in that matter were both improper and unethical."

Jones points to additional instances following the disqualification hearing that demonstrate Judge Kitchin's anger with Ms. Blau. During voir dire at Jones's trial, Ms. Blau objected to a question by the prosecutor. Judge Kitchin cut off Ms. Blau before she could finish her objection and called counsel to the bench. At this bench conference, Judge Kitchin scolded Ms. Blau for making a speech in front of the prospective jurors. Ms. Blau attempted to make a record regarding Judge Kitchin's angry demeanor. After Ms. Blau suggested that Judge Kitchin was angry, Judge Kitchin stated, "I certainly am, because you have no business making a long, rambling speech and statement that was not in fact a legal objection in the presence of the jury. That kind of thing should be done at the bench." It is not clear from the record whether the prospective jurors were able to hear or observe this conference at the bench.

-4-

Finally, additional instances of hostility from Judge Kitchin towards Ms. Blau occurred outside the presence of the jury during an instruction conference, during a telephone conference to schedule Jones's sentencing hearing, and during the sentencing hearing. At the instruction conference, Judge Kitchin refused Ms. Blau's request to place a proposed instruction in the record and referred to her request as "ridiculous." Ms. Blau stated via affidavit that, during a telephone conference to schedule sentencing, Judge Kitchin became angry, abusive, and threatening when she told him that neither defense counsel would be available for a proposed sentencing date. According to Ms. Blau, Judge Kitchin said that if Ms. Kraft or Ms. Blau did not appear for a later date, they would be held in contempt. Finally, at sentencing, Ms. Blau attempted to make a record of the fact that Judge Kitchin had threatened to hold her in contempt during the telephone conference. Judge Kitchen said that her claim was "false and a direct lie" and that what he had said was that "there would be sanctions imposed if you didn't show up today." Ms. Blau claimed her statements were not lies, and Judge Kitchin replied, "Oh, yes they are, young lady, and you know it."

Jones raised the issues of trial court bias and ineffective representation (for counsel's failure to secure Judge Kitchin's recusal or, in the alternative, for Ms. Blau's failure to withdraw as counsel) in a post-trial motion to the state trial court under Missouri Rule of Criminal Procedure 29.15. Jones requested an evidentiary hearing on all of the issues in his Rule 29.15 motion. The trial court granted an evidentiary hearing only as to certain issues not presently before our panel and did not grant an evidentiary hearing as to the issues of judicial bias or the related issue of ineffective assistance. At the Rule 29.15 hearing, counsel advised the court that an evidentiary hearing was not necessary as to many of the claims, including the claims of bias and the related claims of ineffective assistance.

Ultimately, a Missouri trial court judge other than Judge Kitchin denied Jones's Rule 29.15 motion. This judge found that the allegations of judicial bias were

grounds for direct appeal but not grounds for relief in a post-conviction proceeding. The Missouri Supreme Court then heard Jones's appeal from the denial of his Rule 29.15 motion in consolidation with his direct appeal. Regarding the allegations of bias, the Missouri Supreme Court determined that the issue of bias was an issue of state law rather than an issue of federal constitutional rights. Relying on Missouri authority, the Missouri Supreme Court rejected Jones's claims of bias and wrote:

> Jones does not allege facts to show that the judge was biased against him personally or against the merits of his case. It is relatively easy for a party in litigation to claim that he cannot get a fair trial because the judge dislikes his lawyer. We trust trial court judges in the first instance to discover whether such contentions are legitimate and to disqualify themselves in appropriate circumstances. Where as here the judge does not disqualify himself, we have only the record to review to determine whether this alleged animosity has in fact infected the trial with a bias whose source is extrajudicial. Upon this review, we are unable to find such bias manifested to the jury that would cause us to grant a new trial. The above quoted portion of the trial transcript [referring to the exchange during voir dire] is the only portion of the record that Jones can cite to show judicial partiality, and plainly, no bias appears.

Jones, 979 S.W.2d at 179.

Regarding Jones's claim that Judge Kitchin should not have presided over his own disqualification hearing, the Missouri Supreme Court again relied on state law. The court held that because the facts underlying the request for recusal were known to Judge Kitchin, and because these facts were not sufficiently in dispute, Judge Kitchin appropriately determined that he was not required to have another judge address the motion to disqualify. Id. (citing State ex rel. Ferguson v. Corrigan, 959 S.W.2d 113 (Mo. 1997) (en banc) and State v. Taylor, 929 S.W.2d 209, 220 (Mo. 1996) (en banc)). Finally, having disposed of the claims of bias, the Missouri Supreme Court dismissed Jones's related ineffective assistance claims.

Jones next filed a habeas petition in the United States District Court for the Eastern District of Missouri. Jones listed thirty-one claims for relief and requested an evidentiary hearing. The district court rejected all claims, including Jones's claims of bias, and stated, "since petitioner has not cited any additional facts in this action and because the issue being argued is a state law question, this issue is not cognizable for federal habeas corpus review, therefore, no evidentiary hearing is necessary and the claim for relief on this ground must be denied." Regarding the issue of Judge Kitchin's refusal to recuse himself from presiding over his own disqualification hearing, the district court found no evidence to refute the Missouri Supreme Court's finding that the evidence before Judge Kitchin was insufficient to require referral to another judge. Finally, regarding Jones's related ineffective assistance of counsel claims, the district court noted the repeated efforts of counsel to secure Judge Kitchin's recusal and stated, "[a]dditionally, the fact that there has been a completely inadequate demonstration of any bias of Judge Kitchin, the failure to get the judge disqualified cannot be error let alone Constitutional error."

We granted certificates of appealability and now address the issues of Judge Kitchin's alleged bias, his refusal to recuse himself from the disqualification hearing, and the ineffective assistance of Jones's counsel.

## II. Standard of Review

In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions. 28 U.S.C. § 2254; Williams v. Taylor, 529 U.S. 362, 402-13 (2000). Accordingly,

> habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) (quoting 28 U.S.C. § 2254(d)).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Finally, a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings," 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n.4 (8th Cir. 2001) ("There is sufficient record evidence to support such a finding and, thus, it would not constitute an unreasonable determination of the facts in light of the evidence presented at trial.").

In this instance, the Missouri Supreme Court characterized the issue of bias as a matter of state law. See Jones, 979 S.W.2d at 177-78 ("Questions concerning a judge's qualification to hear a case usually are not constitutional questions; rather, they are questions answered by common law, statute, or the code of judicial conduct."). Accordingly, it neither identified nor purported to apply any "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2245(d)(1). The fact that a state court does not rely on United States Supreme Court precedent, however, does not prevent our review of the reasoning and result expressed in a state court's judgment. Early v. Packer, 537 U.S. 3, 7 (2003) (per curiam) ("[a]voiding [reversal on Federal habeas review] does not require

-8-

citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Under Early, it is the substance of the state court's decision that is subject to habeas review.

Before we may conduct this review, however, the habeas petitioner must have fairly presented the issue to the state court as a matter of Federal law. Picard v. Conner, 404 U.S. 270, 275 (1971) ("[o]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied"); Odem v. Hopkins, 192 F.3d 772, 775 (8th Cir. 1999) ("The exhaustion requirement is satisfied if the prisoner gave the state courts a 'fair opportunity' to apply controlling legal principles to the facts that are relevant to his federal constitutional claim."). Here, the state argues that Jones presented the issue of bias to the state courts only as a matter of state law and that habeas review is precluded. Our review of Jones's Rule 29.15 motion reveals, however, that he characterized the issue of judicial bias as a due process violation. Further, review of Jones's arguments before the Missouri Supreme Court reveals that he fairly presented the issue of bias as a violation of his rights under the Due Process Clause of the Fourteenth Amendment. As a result, it is clear that Jones fairly presented his federal claim to the state courts. Accordingly, his claims for habeas relief are not procedurally defaulted, and we may review the Missouri Supreme Court's disposition of his claims to ensure that this disposition is consistent with a reasonable application of, and does not contradict, controlling Supreme Court authority.

## III. Discussion

"[C]learly established Federal law, as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1), recognizes not only actual bias, but also the appearance of bias, as grounds for disqualification:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law."

In re Murchison, 349 U.S. 133, 136 (1955) (quoting Tumey v. Ohio, 273 U.S. 510, 535 (1927)) (omission in original). Although clearly established, this standard is inherently vague. Murchison, 349 U.S. at 136 (noting that the impermissible interest that might cause an average person as a judge to stray from impartiality "cannot be defined with precision."). Application of this vague standard, when viewed through the deferential lens of Williams v. Taylor and the AEDPA, necessarily leaves state courts considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, Murchison and Tumey. This is especially true when the allegations of bias do not relate to pecuniary interests or procedural infirmities, but rather, relate to alleged personal animosity and instances of stern courtroom administration.

Where a judge's interest in the outcome of a case is pecuniary, application of the rule from Murchison and Tumey is simple and the need for disqualification usually will be clear. For example, the Court found a due process violation and held there to be an impermissible appearance of bias where a judicial officer's compensation depended at least in part on obtaining convictions. Tumey, 273 U.S. at 535. Similarly, the Court found a due process violation where an appellate judge participated in a case and set forth a rule of law applicable in a separate, pending proceeding in which the appellate judge was personally involved as a litigant. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986).

In the context of contempt proceedings, which often follow heated arguments and hostile comments, tempers understandably flare. Accordingly, allegations of personal bias are not uncommon in such proceedings. See Ungar v. Sarafite, 376 U.S. 575, 583-84 (1964); Murchison, 349 U.S. at 136-38; Offutt v. United States, 348 US. 11, 17 (1954). Where such allegations arise from contemptuous behavior in closed proceedings that evade outside review, the appearance of impartiality is great, application of the rule is simple, and due process may require disqualification. In Murchison, 349 U.S. at 136-38, the Court faced allegations of bias arising from Michigan's one-person grand jury procedure. In that case, the Court held that where a judge "was at the same time complainant, indicter, and prosecutor" the judge could not later preside over a contempt proceeding regarding one of the grand jury witnesses. Id. at 135. The Court said, "[h]aving been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." Id. at 137.

By contrast, application of the rule is not as simple where the alleged bias is personal and the case involves no closed proceedings or alleged procedural infirmities. In such cases, the general rule that the Court articulated in Murchison and Tumey does not require disqualification unless the potential for bias is sufficiently great to tempt an "average man serving as a judge" to stray from impartiality. Id. The test for determining whether a potential for bias rises to this level is an objective inquiry:

> The test in determining if a judge's bias should be presumed in a particular case is whether, realistically considering psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused. In making this inquiry we, of course, presume the honesty and integrity of those serving as judges.

Dyas v. Lockhart, 705 F.2d 993, 996-97 (8th Cir. 1983) (citing Tumey, 273 U.S. at

532; Withrow v. Larkin, 421 U.S. 35, 47 (1975); and Taylor v. Hayes, 418 U.S. 488, 501 (1974)). In applying this test, the Court explained that we are not to hold judges to a superhuman standard that would allow no expressions of emotion, and that we are to presume the ability of judges to rule impartially notwithstanding personal attacks and challenges to their authority. Liteky v. United States, 510 U.S. 540, 555-56 (1994); Ungar v. Sarafite, 376 U.S. 575, 583-84 (1964). However, disqualification may be proper where "[t]he record discloses not a rare flareup, not a show of evanescent irritation–a modicum of quick temper that must be allowed even judges . . . [but] that instead of representing the impersonal authority of law, the trial judge permitted himself to become personally embroiled with the petitioner." Offut, 348 U.S. at 17 (finding a reduction in an attorney's contempt sanction necessary where the judge presiding at the contempt hearing had become personally embroiled and displayed excessive, ongoing hostility towards the attorney during the attorney's representation of a client in an underlying trial).

In Ungar, for example, disqualification of a judge from a post-trial contempt proceeding was not necessary even though the judge had been the target of contemptuous remarks in the form of a personal attack. 376 U.S. at 583-84. There the Court said, "We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions." Id. at 584. Later, in Liteky v. United States, 510 U.S. 540, 555-56 (1994), the Court stated:

> Not establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

Id. (not addressing a due process challenge, but interpreting 28 U.S.C. § 455 (1974),

the federal statute that governs the disqualification of federal judges). Accordingly, we must examine the allegations of bias in the present case in the context of these teachings and not presume that "a stern and short-tempered judge's ordinary efforts at courtroom administration" directed towards counsel are adequate grounds to find bias against a defendant.

Here, the Missouri Supreme Court assessed the allegations of bias against Judge Kitchin and determined, in effect, that Judge' Kitchin's history with Ms. Blau and his expressions of anger and annoyance in the courtroom did not reflect bias towards Jones's defense, but instead, fell within the broad latitude that trial judges possess to carry out courtroom administration. The Missouri Supreme Court found:

> [I]n the instant case, the record does not support a claim that the trial judge's attitude towards defense co-counsel affected the jury in its fact determinations or sentence recommendation. There is only one place in the trial record that appellant can cite to support his claim that the trial judge's bias affected the trial. . . . From [the trial record] it is not clear that the judge's anger was shown towards defense co-counsel in his remarks in front of the jury, or whether the anger was shown only at the bench out of the jury's hearing. *Furthermore, Jones does not allege facts to show that the judge was biased against him personally or against the merits of his case.*

Jones, 979 S.W.2d at 178-79 (emphasis added).

Upon reviewing the instances of hostility identified by Jones, we do not believe Judge Kitchin's demeanor was wholly unjustified nor do we believe that Judge Kitchin's reactions exceeded that which "imperfect men and women, even after having been confirmed as . . . judges, sometimes display." Liteky, 510 U.S. at 555-56. Mr. Scholz and others in the disqualification hearing were uncooperative and failed to follow the court's instructions. Because annoyance, or even anger, that a judge might express during trial proceedings is not necessarily grounds for

-13-

disqualification, and because there is no indication of bias towards Jones and no showing that any demonstration of anger or annoyance infected jurors, we conclude the Missouri Supreme Court reasonably determined that the influences upon Judge Kitchin were not such as would offer "a possible temptation to the average man as a judge not to hold the balance nice, clear, and true between the State and the accused." Murchison, 349 U.S. at 136.

Regarding Judge Kitchin's refusal to recuse himself from his own disqualification hearing, Jones cites, and we find, no clearly established Federal law as defined by the Supreme Court of the United States that would require recusal. Because the facts relied upon to allege bias were known to Judge Kitchin and were not in dispute, Jones's claims of a due process violation are without merit. Because we presume the honesty and integrity of judges, Withrow, 421 U.S. at 47, we do not presume judges incapable of assessing their own fitness to hear cases on essentially undisputed facts. The record amply reflects that Judge Kitchin openly admitted his dissatisfaction with Ms. Blau. The record clearly demonstrates that, in presiding, Judge Kitchin did nothing to suppress evidence of his history with, or attitude towards, Ms. Blau.

Finally, because relief is not warranted on the underlying claims of bias, relief is not warranted on the related claim of ineffective assistance of counsel. Without a finding of bias, the ineffective assistance of counsel claim fails under the prejudice requirement of Strickland v. Washington, 466 U.S. 668, 690 (1984).

The judgment of the district court is affirmed.

———————————————