# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-3642

_____

Michael W. Ryan,                          *
                                          *
       Petitioner - Appellant,       *
                                          *   Appeal from the United States
    v.                                  *   District Court for the District
                                          *   of Nebraska.
Harold W. Clarke, Director, State of      *
Nebraska Department of                    *
Correctional Services                     *
                                          *
       Respondent - Appellee.        *

_____

Submitted:  June 17, 2004
Filed: October 29, 2004

_____

Before BYE, BOWMAN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Petitioner-Appellant Michael W. Ryan, a state prisoner under a sentence of death, appeals the district court's[1] denial of habeas relief.  On appeal, Ryan argues that ex parte meetings with members of the victims' families by the state judge who

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

presided over his capital murder trial deprived him of a fair sentencing hearing. Ryan also alleges that he was not competent to stand trial or proceed with his habeas corpus proceeding. However, since the Nebraska courts did not make "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," 28 U.S.C. § 2254(d)(2), nor apply "clearly established Federal law, as determined by the Supreme Court of the United States" in an unreasonable manner, 28 U.S.C. § 2254(d)(1), we affirm.

## I. Background

On April 10, 1986, a jury convicted Ryan of first degree murder in the death of James Thimm. Thimm died April 29, 1985, after Ryan and four others tortured him for three days. The state of Nebraska also charged Ryan with the murder of Luke Stice. Ryan entered a plea of nolo contendere to the second degree murder of Stice. The Nebraska Supreme Court set forth the underlying facts of the crimes in its opinion on direct appeal, State v. Ryan, 444 N.W.2d 610 (Neb. 1989) (Ryan I), and on appeal of Ryan's first motion for post conviction relief, State v. Ryan, 534 N.W.2d 766 (Neb. 1995) (Ryan II). We granted a certificate of appealability as to three issues: 1) the application of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA); 2) Ryan's competency; and 3) the effect of any misconduct by the trial court in holding the ex parte meeting with the victims' families prior to sentencing. We address in detail only facts that are relevant to these issues.

Judge Robert T. Finn presided over Ryan's trial. Judge Finn was to sentence Ryan for both the first degree murder of Thimm and the second degree murder of Stice. On September 10, 1986, following Ryan's conviction for the Thimm murder, one of Ryan's trial attorneys, Richard Goos, filed a motion asking Judge Finn to disqualify himself from Ryan's sentencing. Goos argued that an ex parte August meeting between Judge Finn and Stice's family required Judge Finn to disqualify himself.

On September 15, 1986, Judge Finn considered the motion to disqualify himself. Goos expressed concern that Thimm's sentencing had been discussed during the meeting with the Stice family. Judge Finn overruled the motion and stated that he had not discussed Thimm's sentencing at the ex parte meeting. The sentencing hearing took two days, concluding on September 16, 1986. On October 16, 1986, Judge Finn sentenced Ryan to death for the murder of Thimm. Ryan had already been sentenced to life imprisonment for the murder of Stice.

Ryan appealed his conviction and sentence. In his appeal, he raised the issue of judicial misconduct based on the ex parte meeting, the fact that Judge Finn turned his back on Ryan during Ryan's testimony at trial, and Judge Finn's failure to disqualify himself from sentencing. The Nebraska Supreme Court affirmed Ryan's conviction and sentence on direct appeal. Ryan I, 444 N.W.2d at 656.

On October 19, 1990, Ryan filed his first motion in the Nebraska trial court for post conviction relief, which included Ryan's claims of judicial misconduct in sentencing. The case was referred to retired Judge Dewayne Wolf. Ryan's appointed attorney, Robert Creager, investigated the issue of possible ex parte meetings between Judge Finn and members of both victims' families. As part of this investigation, Creager met with Judge Finn. Judge Finn told Creager that he had not held any ex parte meetings with the Thimm family. On April 27, 1993, Judge Finn signed an affidavit attesting to the fact that he had not held any ex parte meetings with the Thimm family. Judge Wolf denied Ryan's first motion for post conviction relief.

Ryan appealed. On appeal, Ryan again asserted that Judge Finn's refusal to disqualify himself from the sentencing hearing deprived Ryan of a fair sentencing procedure. Ryan also alleged that he had been deprived of his right to effective assistance of counsel because trial counsel failed to adequately raise the issue of judicial misconduct regarding Judge Finn's ex parte communications. The Nebraska Supreme Court affirmed the district court's decision, concluding that Ryan was not

prejudiced by the ex parte meeting between Judge Finn and the Stice family. The court held that it had addressed the ex parte meeting issue on direct appeal and that Ryan was not entitled to relitigate the same issues in a post conviction proceeding. Ryan II, 534 N.W.2d at 460-61.

On November 17, 1995, Ryan filed a pro se petition for a writ of habeas corpus and stay of execution in federal court. The federal district court appointed counsel to represent Ryan. On April 1, 1996, Ryan's counsel filed an amended habeas petition. The amended petition raised claims relating to competency. Ryan did not raise issues regarding his competency in his first motion for state post conviction relief. In addition, the petition included new information and allegations regarding ex parte contact between Judge Finn and the victims' families. In a deposition taken by Ryan's appointed counsel, Thimm's foster cousin, Daneda Heppner, testified that she and another member of the Thimm family met with Judge Finn in May 1986. Heppner corroborated her information with a letter dated May 12, 1986, from Heppner to her family. In her letter, she informed them of the proceedings and her meeting with Judge Finn.

A federal magistrate judge found that Ryan had not fairly presented the factual basis for the judicial misconduct claim to the Nebraska Supreme Court. It was not evident whether Ryan had exhausted all of the state court remedies available to him regarding a meeting between Judge Finn and members of the Thimm family.[2] Accordingly, the district court gave Ryan the option of either withdrawing the amended petition or dismissing the action without prejudice to pursue the new judicial misconduct claim in state court. Ryan moved to dismiss his petition without prejudice, and the court granted his motion.

---

[2]The court had addressed only the meeting with the Stice Family in Ryan I and Ryan II.

On November 7, 1996, Ryan filed a second motion for post conviction relief in the state trial court. Judge Gerald E. Moran was appointed to hear the motion. Judge Moran held an evidentiary hearing. Judge Finn testified that he had no recollection of an ex parte meeting, but based on the Heppner letter, such a meeting must have occurred. Judge Finn also testified that he had no recollection of the meeting when he overruled the motion to disqualify himself on September 15, 1986.

Judge Moran found that an improper ex parte meeting did occur on May 9, 1986, between Judge Finn and Thimm family members. Judge Moran concluded, however, that any claims related to the May 9 meeting were procedurally barred because Ryan and his counsel knew or reasonably should have known about the May 9 meeting during the direct appeal and the first post conviction proceedings. In the alternative, Judge Moran determined that even if the ex parte meeting claim was not procedurally barred, Ryan suffered no prejudice as a result of the meeting with the Thimm family or Finn's refusal to recuse himself.

Judge Moran also addressed Ryan's competency claims. He concluded that the competency claims were procedurally barred because Ryan could have raised the issue previously and had failed to do so. Judge Moran found, in the alternative, that Ryan was competent to stand trial, such that even if the competency claims were not barred, they did not entitle Ryan to relief.

On September 10, 1999, the Nebraska Supreme Court affirmed this denial of relief. State v. Ryan, 601 N.W.2d 473 (Neb. 1999) (Ryan III). In Ryan III, the Nebraska Supreme Court rejected the trial court's determination that the claims related to the May 9 meeting between Judge Finn and the Thimm family members were procedurally barred. The Nebraska Supreme Court did conclude, however, that Judge Moran's alternative holding that there was no showing of actual bias was not clearly erroneous, and that the factual record supported that conclusion. As to the competency claim, the Nebraska Supreme Court agreed that the claim was

procedurally defaulted. The Nebraska Supreme Court concluded: "Allowing Ryan to first raise the issue of competency after more than ten years of appellate litigation, during which Ryan chose not to raise the issue would make a mockery of the finality of the judicial process." Ryan III, 601 N.W.2d at 493.

Having exhausted his state remedies, Ryan filed another petition for a writ of habeas corpus. The federal district court denied his petition. We granted a certificate of appealability. We now address the issues of the applicability of the AEDPA, whether Ryan's competency claims were procedurally defaulted, whether Ryan was competent to stand trial, whether Ryan is presently competent to stand trial in his habeas proceeding and whether Judge Finn's ex parte meetings with the victims' families violated Ryan's rights to a fair sentencing.

## II. Applicability of the AEDPA

The AEDPA applies only to habeas petitions filed after April 24, 1996, the date the AEDPA became effective. Weaver v. Bowersox, 241 F.3d 1024, 1029 (8th Cir. 2001) ("AEDPA's provisions apply to all habeas corpus petitions filed after Act's effective date."). We held in Weaver that "this rule applies even when a prisoner's original petition was filed prior to AEDPA's effective date and dismissed without prejudice for failure to exhaust state remedies." Id.

In this case, Ryan filed his first petition for post conviction relief on November 17, 1995, prior to the effective date of the AEDPA. At that time, Ryan had not yet exhausted his state court remedies. Consequently, the federal district court dismissed his petition so that he could exhaust his claims at the state level. Ryan returned to state court to again seek post conviction relief in the Nebraska state courts. On December 10, 1999, Ryan filed another habeas petition in federal court. This petition came after the AEDPA became effective. Under our decision in Weaver, the AEDPA is applicable.

Ryan asserts that his 1999 petition should enjoy the benefit of his 1995 filing date. We disagree for two reasons. First, Ryan's 1999 habeas petition contains added claims which do not arise out of the same conduct, transaction, or occurrence as the claims in the 1995 petition. These new claims cannot relate back to the original claim. United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); Fed. R. Civ. P. 15(c)(2). Second, Ryan's argument is the exact argument we rejected in Weaver. Weaver, 241 F.3d at 1029 (holding that the AEDPA applies "even when a prisoner's original petition was filed prior to AEDPA's effective date and dismissed without prejudice for failure to exhaust state remedies.").

Ryan also argues that Woodford v. Garceau, 538 U.S. 202 (2003), overrules Weaver on this point. The Supreme Court held in Woodford that a case is not pending until an actual petition for habeas relief is filed in federal court. The Court stated in Woodford that:

> [W]hether AEDPA applies to a state prisoner turns on what was before a federal court on the date AEDPA became effective. If, on that date, the state prisoner had before a federal court an application for habeas relief seeking an adjudication on the *merits* of the petitioner's claims, then amended § 2254(d) does not apply. Otherwise, an application filed after AEDPA's effective date should be reviewed under AEDPA, even if other filings by that same applicant . . . were presented to a federal court prior to AEDPA's effective date.

Id. at 1402. The holding in Woodford is consistent with our ruling in Weaver that the AEDPA's provisions apply to all habeas petitions filed after the AEDPA's effective date. This includes petitions a prisoner filed after a district court dismissed an earlier petition without prejudice for failure to exhaust state remedies. Thus, the AEDPA applies in this case.

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions" in habeas corpus cases. Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004). See 28 U.S.C. § 2254; Williams v. Taylor, 529 U.S. 362, 402-13 (2000). Federal review of underlying state court decisions is limited because under the AEDPA, federal courts have the power to grant habeas relief only if one or both of two conditions is satisfied. We may grant habeas relief on a "claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), if the state court's decision was: 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or 2) based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

We have explained the standard for when a decision is "contrary to" established Supreme Court precedent or involves an unreasonable factual determination on a number of occasions, including in Jones, in which we stated:

> A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Finally, a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n.4 (8th Cir. 2001) ("There is sufficient record evidence to support such a finding and, thus, it would not

-8-

constitute an unreasonable determination of the facts in light of the evidence presented at trial.").

Jones, 359 F.3d at 1011-12 (alteration in original). We apply this analysis to the present case.

### III. Competency Claims

The Nebraska Supreme Court determined that the competency issue was procedurally defaulted. Ryan relies on Vogt v. United States, 88 F. 3d 587 (8th Cir. 1996), to argue that this conclusion by the Nebraska Supreme Court was an unreasonable application of clearly established federal law. The Vogt court rejected the argument that a petitioner waives or defaults a mental competency claim when he fails to raise it in the district court or on direct appeal. The Vogt court cited Adams v. Wainwright, 764 F.2d 1356, 1359 (11th Cir. 1985) (citing Pate v. Robinson, 383 U.S. 375 (1966)), for the proposition that the procedural default rule does not preclude a defendant who fails to request a competency hearing at trial, or fails to pursue a claim of incompetency on appeal from raising the issue through post conviction proceedings. The rationale behind this ruling was that a defendant who is truly incompetent does not have the ability to knowingly or intelligently waive his right to have the competency issue determined at trial. Pate, 383 U.S. at 384.

Pate stands for the specific proposition that a defendant who fails to raise competency at trial or on direct appeal does not waive his right to raise the issue in post conviction relief proceedings. However, Pate does not deal with a factual and procedural situation such as the present case, where the defendant has already gone through a full post conviction proceeding and is now raising the competency issue only in a second proceeding in the Nebraska courts. In fact, in the initial post conviction action, Ryan claimed that his trial counsel was ineffective for even raising an insanity defense. Given the unusual procedural posture of this case, where the competency issue was not raised in the initial post conviction proceeding, we are

reluctant to find that the Nebraska Supreme Court's determination of procedural default was an unreasonable application of clearly established Supreme Court precedent.

However, even if we were to assume that the Nebraska Supreme Court was incorrect in its determination of procedural default, there is more than ample evidence in the record to support Judge Moran's alternative holding that Ryan was competent and that his constitutional rights were not violated by the failure to hold a competency hearing. The test as to whether a defendant is competent to stand trial is whether the defendant has a "sufficient present ability to consult his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). As the petitioner in a habeas action, Ryan has the burden of demonstrating that the state courts' findings of competency are not supported by the record. 28 U.S.C. § 2254(d)(2), (e)(1). Ryan fails to meet this burden.

The record shows that Judge Moran, the judge who presided over Ryan's second state post conviction action, conducted a thorough review of the record and reached a reasonable conclusion based on that record. The expert testimony reviewed by Judge Moran offers evidence to support a finding that Ryan was competent. The state's experts, including Dr. Emmett Kenney, always asserted that Ryan was competent. The state's experts also pointed to the administration of the Minnesota Multiphasic Personality Inventory (MMPI), a respected objective psychological test. Results of this test showed that while Ryan had an odd personality, he had no mental illness that would cause him to be incompetent.

A number of other experts examined Ryan, including Dr. William Logan, M.D., a psychiatrist, and Dr. Robert E. Schulman, Ph.D., a psychologist, both hired by the defense. Only these two experts stated that Ryan was incompetent, and they only did so years after the trial. Judge Moran found:

-10-

. . . it does appear that strikingly absent in this case is even one opinion from anyone other than the defendant's experts, Drs. Logan and Schulman, that he was not competent to stand trial . . . Yet, the record is clear that neither doctor ever expressed such an opinion at a time when it would have been an issue for the defense to explore." Nebraska v. Ryan, No. 2390, slip. op. at 40-41 (Neb. Dist. Ct. for Richardson County).

In fact, Dr. Logan originally testified he did not believe that Ryan's mental illness "would have prevented him from having the capacity to understand . . . that [he] could be indicted for murder and punished." Id. at 28.

Ryan's trial counsel provide further evidence that a finding of competency was reasonable. Neither Richard Goos nor Louie Ligouri, Ryan's trial attorneys, observed anything that caused them to suspect Ryan was incompetent. Goos testified that Ryan had little or no difficulty communicating with his lawyers. Goos said, "what delusions [Ryan] had about Yaweh . . . never seemed to interfere with our conversations or his understanding of the case or what was at stake." Ryan v. Clarke, 281 F. Supp. 2d 1008, 1032-33 (D. Neb. 2003) (Ryan IV) (alteration and omission in original). Additionally, Robert Creager, Ryan's attorney for the first post conviction proceeding, examined the issue of competency and decided not to raise the issue. Rather, he alleged that trial counsel had been incompetent for raising an insanity defense. Although not medical experts, it seems notable that none of Ryan's attorneys, after meeting Ryan or reviewing the record felt it was appropriate to raise the issue of competency at trial or in the first post conviction proceeding.

Further, the district court correctly determined that evidence of Ryan's competency can be found in the testimony before Judge Moran that Ryan counseled his son to lie at his trial by blaming others for his conduct. Ryan IV, 281 F. Supp. 2d at 1033.

Judge Moran reasonably concluded that: 1) Logan and Schulman's opinions were not credible; 2) the experts' opinions were not supported by the experts' observations at the time of trial; 3) the MMPI tests and state experts were credible; 4) Ryan's record of participation in trial and efforts to avoid execution by trying to convince his son to lie about his role in criminal activities demonstrated that Ryan was fully aware of the gravity of the charges he faced and the possible punishment; and 5) he was competent to participate in his own defense. Given this evidence, a court could reasonably find that Ryan possessed the capacity to understand the charges against him, had the ability to cooperate with his attorneys, and could prepare a rational defense. A court could make these findings even though Ryan may have held unusual beliefs or even been delusional. Thus, Ryan was competent to stand trial and remains competent today.

We conclude that the Nebraska Supreme Court reasonably determined that Ryan was competent to stand trial and remains so today.

IV. Ex Parte Meetings

Judge Finn held impermissible and inappropriate ex parte meetings with the victims' families. This is undisputed in light of Judge Finn's testimony at the evidentiary hearing. It is also clear that Judge Finn signed an affidavit claiming that he never had ex parte communications with the victims' families. This conduct was improper under Nebraska law. Ryan III, 601 N.W.2d at 486.

In light of this impropriety, we might decide this case differently if we were considering it on direct appeal. However, under the highly deferential standard mandated by the AEDPA, we cannot find that the Nebraska Supreme Court's decision was an unreasonable application of controlling Supreme Court precedent, nor did it involve an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In this case, the Nebraska Supreme Court's finding that the ex

-12-

parte proceedings did not show actual bias was not an unreasonable factual determination in light of the evidence presented in the state court proceedings.

There is sufficient evidence in the record to support the Nebraska state courts' conclusion that any possible prejudicial effect of the ex parte meetings on Judge Finn's sentencing was minimal given the nature of the evidence presented at trial. As the district court explained, "Judge Finn was not presented with any material information about issues pertinent to Ryan's death sentence during the Thimm or Stice family meetings that had not already been presented to Judge Finn in earlier court proceedings." Ryan IV, 281 F. Supp. 2d at 1036-37. This case involves horrific instances of torture and murder. It was not unreasonable for the Nebraska state courts to conclude that there was little the victims' families could say that would have had a prejudicial effect on Judge Finn given the evidence and testimony he had already heard. The Nebraska Supreme Court reasonably concluded that Judge Finn could not have been presented with any evidence at the May 9, 1986 meeting that had not already been presented to him, and that he made his sentencing decision based upon the documentary evidence and the record before the trial court. Ryan III, 601 N.W.2d at 490.

Ryan also argued that the ex parte communications showed that Judge Finn had an improper bias against him, and that this bias deprived him of a fair sentencing. "[C]learly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), recognizes not only actual bias, but also the appearance of bias, as grounds for disqualification. See, e.g., In re Murchison, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.").

As this court stated in <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1012-13 (8th Cir. 2004),

> Although clearly established, this standard is inherently vague. <u>Murchison</u>, 349 U.S. at 136, 75 S.Ct. 623 (noting that the impermissible interest that might cause an average person as a judge to stray from impartiality "cannot be defined with precision."). Application of this vague standard, when viewed through the deferential lens of <u>Williams v. Taylor</u> and the AEDPA, necessarily leaves state courts considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, <u>Murchison</u> and [<u>Tumey v. Ohio</u>, 273 U.S. 510 (1927)]. This is especially true when the allegations of bias do not relate to pecuniary interests or procedural infirmities, but rather, relate to alleged personal animosity and instances of stern courtroom administration.

In instances of "closed proceedings that evade outside review, the appearance of impartiality is great . . . and due process may require disqualification." <u>Id</u>. at 1013. The peculiar facts of this case, however, are different because the egregious nature of the evidence presented at trial minimized any possible effect of the ex parte meeting.

The Nebraska state courts reasonably concluded that any possible appearance of impartiality, in this case, was de minimis. The "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994). In this instance, the state courts could reasonably find that any disdain Judge Finn possessed for Ryan was motivated by evidence and testimony presented at trial. It is unlikely that any statements by the families could have altered Judge Finn's sentencing.

-14-

Thus, although we believe that Judge Finn's ex parte meeting with the victims' families was improper, we hold that under the highly deferential standard mandated by the AEDPA, we cannot find that Nebraska Supreme Court's conclusions were an unreasonable application of controlling Supreme Court precedent, nor did they involve an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

The judgment of the district court is affirmed.

_____