IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2008

Charles R. Fulbruge III
Clerk

No. 06-70024

CARL WAYNE BUNTION,

Petitioner-Appellee,

v.

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Carl Wayne Buntion was convicted of capital murder and sentenced to death in 1991. The district court granted Buntion conditional habeas relief on his claim of judicial bias. The State appeals the district court's grant of conditional habeas relief. Bound by the strictures of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), we VACATE the district court's grant of conditional habeas relief. Habeas relief is DENIED.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A.    Trial and Direct Appeal

At about 7:45 p.m. on June 27, 1990, Houston Police Officer James Irby was on motorcycle patrol when he stopped a car for a minor traffic violation. After parking his motorcycle, Irby approached the driver's side of the car and spoke briefly with the driver, who had already exited the vehicle.  Irby and the driver, still conversing, walked toward the rear of the car.  Irby then walked back to the driver's side of the car, looked in the car, and spoke briefly with Buntion, who was the only passenger.  Irby then returned to the rear of the car, where he continued speaking with the driver.  Buntion then exited the car from the passenger's side.  Irby motioned to Buntion to get back in the car, but Buntion proceeded toward Irby.  When he was about five feet from Irby, he raised a long-barrel revolver with both hands and fired a shot into Irby's forehead.  Irby died almost instantly.  The police arrested Buntion later that day.

On June 28, 1990, Buntion was indicted for the capital murder of a peace officer.  Judge William Harmon of the 178th District Court for Harris County presided over the trial, appointing three local criminal defense attorneys, Phillip Scardino, Allen Tanner, and John Keirnan, to represent Buntion.  Based on the "unprecedented" amount of publicity Buntion's trial was receiving, Judge Harmon granted a change of venue, moving the trial to Gillespie County.

Voir dire began in early November 1990, and was apparently a very slow process; by December 6, 1990, the parties had only selected eight jurors.  During the voir dire proceedings, the defense at one point ran out of peremptory challenges. Judge Harmon then granted the defense fifty additional peremptory challenges, an action that the prosecution challenged with a bill of exceptions.  The next day, Judge Harmon reversed himself, withdrawing the remaining

additional challenges and granting the defense only four more. The defense objected to the change.

On December 12, 1990, based on Judge Harmon's comments, behavior, and rulings during voir dire, the defense filed its first recusal motion. Specifically, Buntion alleged that: Judge Harmon made an off-the-record statement in open court that he was "doing God's work to see that defendant Buntion gets executed;" Judge Harmon criticized the Texas Criminal Court of Appeals ("TCCA") decision in Gribble v. State, 808 S.W.2d 65 (Tex. Crim. App. 1990) (en banc) relating to the presentation of mitigating evidence in death penalty cases; and Judge Harmon acted capriciously in withdrawing the fifty additional peremptory challenges. Buntion also raised additional claims that are not relevant to this appeal.

In a recusal hearing before Judge Ables of the 216th District Court, Judge Harmon admitted that he made the comment that he was doing "God's work" in seeing the defendant executed but claimed that everyone except Buntion realized that it was a joke. He also stated that his criticism of the Gribble decision was related to his belief that the opinion provided a lack of guidance to trial judges. Finally, Judge Harmon testified that while he had an opinion as to what the outcome of the case would be, he would not let this prediction affect his trial rulings. Judge Ables denied the recusal motion.

The court, still in jury selection, recessed from December 19, 1990, until January 7, 1991. On Christmas Eve, Judge Harmon called Scardino and told him that he could no longer represent Buntion. The dismissal of defense counsel was widely reported in the Texas media, with Judge Harmon making statements to the press that he believed defense counsel Scardino was attempting to derail the proceedings. On December 30, 1990, Judge Harmon again contacted the media, saying that Scardino would not be removed as Buntion's counsel. Judge Harmon made this decision after a state prosecutor and one of Buntion's other

attorneys visited him at home and presented him with a TCCA decision prohibiting the arbitrary removal of counsel. The judge stated that he was still convinced that Scardino was attempting to "sabotage" the trial.

When the court reconvened on January 7, 1991, all of the jurors except for the alternates had been selected. Defense counsel requested that, in light of the intense media attention given to the trial during the recess, the jurors be questioned regarding their exposure to the reports. Judge Harmon allowed questioning of those two jurors who indicated that they were aware of the attempted removal of Scardino. Neither of these jurors were removed, and the alternates were chosen.

On January 8, 1991, the defense again filed a motion to recuse Judge Harmon and for a mistrial. This recusal motion was based on the granting and withdrawal of the peremptory strikes, the "God's work" comment, and the attempted removal of Scardino, along with other bases not relevant to this appeal. The defense motion also alleged that Judge Harmon placed a postcard depicting Judge Roy Bean, an infamous Texas "hanging judge," on the bench during portions of jury selection. Judge Harmon had altered the message on the postcard to read "Judge Bill Harmon: Law West of the Perdernales." Judge Jordan of the 198th District Court presided over the hearing on the recusal motion.

During this hearing, Judge Harmon admitted to contacting the Harris County District Attorney's office to discuss the peremptory challenges. He stated that he had contacted the office "on numerous occasions" when he had a legal question, but that he had only "briefly" discussed the issue of the peremptory strikes with the office. He admitted that he placed the Judge Roy Bean postcard on the bench during the voir dire process, but he did not believe that any prospective jurors saw the postcard. He did not state why he placed the postcard on the bench.

Defense counsel Keirnan also testified about an ex parte meeting between the judge and defense counsel Tanner one night at a convenience store. All three of Buntion's lawyers drove to a convenience store around midnight. After Kiernan and Scardino had left, Judge Harmon approached Tanner and accompanied him back to his hotel room. At this point in the hearing, because Kiernan was testifying, the judge stopped the testimony because of the hearsay nature of relating the discussion between Tanner and Judge Harmon. Buntion alleges that Judge Harmon told Tanner that he would accuse the defense attorneys of possessing drugs if they continued to challenge his behavior. Judge Harmon admitted that he accompanied Tanner to his hotel room but denied making any kind of threats. Judge Jordan denied the recusal motion.

The trial began on January 14, 1991. The guilt/innocence phase of the trial lasted until January 24, 1991. At some point during the trial, Buntion alleges that a sheriff in the courtroom told a juror wearing a suit that the juror was "dressed to kill." This comment was not objected to at the time it was made.

The jury found Buntion guilty of capital murder. After listening to the evidence and testimony during the punishment phase of the trial, the jury made the requisite findings on the special issues to sentence Buntion to death. The defense filed post-trial motions, including one seeking a new trial and the recusal of Judge Harmon. The recusal motion was denied by Judge Montgomery of the 178th District Court, and Judge Harmon then denied the motion for a new trial. On direct appeal, Buntion again challenged Judge Harmon's impartiality, but his challenge was rejected and his conviction and sentence were affirmed.

B.    State Habeas Proceedings

In his state habeas proceedings, Buntion again alleged that his due process rights were violated because of Judge Harmon's lack of impartiality. He specifically complained about Judge Harmon's prejudging his guilt, the "God's work" comment, the commentary about the Gribble decision, the grant and

recision of the peremptory challenges, the display of the postcard, the attempted removal of defense counsel Scardino, and the alleged threatening of defense counsel Tanner. Judge Harmon, the state habeas judge,[1] found that there was no evidence of bias on the part of the trial judge. He also noted that defense counsel often did not object at trial to the behavior complained about in the habeas petition. Judge Harmon denied habeas relief. The TCCA relied on the findings of the lower court and also denied habeas relief.

C.    Federal Habeas Proceedings

Buntion alleged numerous grounds of error in his federal habeas petition. However, the sole issue before this Court is Buntion's claim that he was denied due process because Judge Harmon was not impartial. Buntion points to the following facts as establishing bias: the judge's pretrial suggestion that Buntion was guilty; the "God's work" comment; the statements about the Gribble decision; the display of the postcard; the judge's ex parte interactions with defense counsel Tanner; the attempted removal of defense counsel Scardino; the grant and removal of the additional peremptory challenges; and the actions of the trial judge considered as a whole.

The district court interpreted Buntion's bias argument as being based on a consistent pattern of "egregious judicial behavior;" therefore, the court considered multiple error allegations to determine if Judge Harmon was biased. The district court held that the state court erred in "requiring specific evidence of a reversible error nature in the judicial misconduct" because Buntion's claim is not one of actual bias. Instead, "reliance on the record alone suffices to establish those apparent biases that rise to the level of a constitutional

---

[1] Although Buntion challenges the fact that deference should be given to the state court findings when Judge Harmon was essentially approving his own behavior, this court has held that it is generally proper for the trial judge to preside over the state habeas claim. Vuong v. Scott, 62 F.3d 673, 684 & n.15 (5th Cir. 1995). Even if such an action was suspect, it does not support the grant of habeas in this case because the findings of the recusal hearings are also entitled to AEDPA deference.

violation." According to the district court, the state court therefore unreasonably applied federal law by refusing to consider Buntion's federal claim because of a lack of specific evidence of bias. Additionally, the district court found that the state habeas court's determination of facts was unreasonable because the state court considered the claims as individual events, rather than as an overarching, flawed trial proceeding.

Based on the above determinations, the district court concluded that Buntion fulfilled his burden under AEDPA. The district court went on to determine whether there was a violation of Buntion's constitutional rights by viewing each of Judge Harmon's comments and actions in the aggregate. The district court found bias demonstrated by: the postcard; the "God's work" comment; statements indicating that Judge Harmon had prejudged the facts in the case; the comments about the Gribble decision; Judge Harmon's ex parte interactions with state attorneys on legal matters; his pattern of reversing himself at the urging of prosecutors; and his interactions with defense counsel. The district court denied habeas relief on all of Buntion's other claims; Buntion does not appeal those determinations.

## II. DISCUSSION

A. Standard of Review

This court reviews the district court's legal determinations and application of AEDPA de novo. Foster v. Quarterman, 466 F.3d 359, 368 (5th Cir. 2006). Factual findings are reviewed for clear error. Id. AEDPA provides in relevant part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

7

established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1). "A decision is contrary to clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" Gardner v. Johnson, 247 F.3d 551, 557 (5th Cir. 2001) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). Where the state court has identified the proper legal principle but unreasonably applied it to the case, that court's determination represents an unreasonable application of federal law. Id. (quoting Williams, 529 U.S. at 413).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 127 S. Ct. 1933, 1939 (2007) (citing Williams, 529 U.S. at 410). The factual findings of the state habeas court are to be given deference unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In the present case, because the state habeas courts relied heavily on the direct appeal determination by the TCCA, Ex parte Buntion, No. 22,548-02 (Tex. Crim. App. Nov. 5, 2003); Ex parte Buntion, No. 588227-A (Tex. Dist. Ct. Sept. 29, 2003), which in turn relied heavily on the legal conclusions of the recusal hearings, Buntion v. State, No. 71,238 (Tex. Crim. App. May 31, 1995), all of these findings are entitled to deference under AEDPA. 28 U.S.C. § 2254(e)(1); see also Guidry v. Dretke, 397 F.3d 306, 325-26 (5th Cir. 2005) (implying that evidence adduced at state pre-trial suppression hearings is relevant to the AEDPA determination).

B.     The District Court's Application of AEDPA

On appeal, the Director argues multiple points of "procedural" error, all based on his contention that the district court did not correctly apply AEDPA. The first of these challenges is that the district court actually considered Buntion's bias claims de novo instead of under AEDPA's stricter standard. Additionally, the Director urges that the district court applied a more lenient standard when reviewing the state court's factual determinations than is required by AEDPA. Finally, the Director contends that the district court incorrectly relied on sources other than clearly established law as determined by the Supreme Court.

In applying AEDPA to this case, the district court determined that the state court's application of the law was objectively unreasonable. The district court's finding constitutes legal error for two reasons. First, the district court relied on sources outside of clearly established Supreme Court precedent as required by AEDPA. The district court evaluated Judge Harmon's behavior using the Texas Code of Judicial Conduct,[2] stating that the provisions of the Code "track the protections guaranteed by the Constitution," as well as opinions from the Fifth Circuit and other circuits. Reliance on these sources is misplaced under AEDPA, which allows federal review only if the state habeas court rendered a decision contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 412 (holding that AEDPA allows reliance only on the holdings, not dicta, of Supreme Court opinions). Second, even if the district court had considered only

---

[2] In 1993, the Texas State Commission on Judicial Conduct publically reprimanded Judge Harmon for his behavior in Buntion's case, particularly for the "Judge Roy Bean" postcard and his "God's work" comment. See Shawn E. Tuma, Law in Texas Literature: Texas Justice-Judge Roy Bean Style, 21 REV. LITIG. 551, 576-77 (2002); Susan Borreson, The Ringmaster, TEX. LAW., Jan. 31, 2000, at 20; Gary Taylor, The Judge Gets Beaned, NAT'L L.J., May 10, 1993, at 47; Clay Robison, State Panel Reprimands District Judge Harmon, HOUS. CHRON., Apr. 1, 1993, at A29.

Supreme Court case law, there is not a basis under Supreme Court precedent for finding that the state court's ultimate determination is objectively unreasonable. See infra Part II-C.

Finally, it should be noted that the district court determined that the state court's factual findings were also unreasonable. See 28 U.S.C. § 2254(d)(2). This is a clear legal error because very few factual determinations are in dispute; even for those that are, such as whether or not Judge Harmon threatened defense counsel, Buntion would be required to present clear and convincing evidence that the state court's factual determinations were incorrect. Id. at § 2254(e)(1). Buntion has not done so. The district court found that the factual findings were "unreasonable" because the state court considered Buntion's claims of judicial bias as "individual, secluded events." While it arguably may have been legal error for the state court to analyze the bias claims in isolation rather than cumulatively,[3] there is no unreasonable factual determination that the district court relies on to justify its finding that Buntion has satisfied § 2254(d)(2). Therefore, this determination is incorrect as well, although because the facts are basically agreed on, this error does not have much effect on the outcome of this case.

C.    Judicial Bias Analysis

Having determined that the district court improperly applied AEDPA, we now analyze Buntion's claim under the appropriate AEDPA standard.

Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial. See, e.g., Bracy v. Gramley, 520 U.S. 899, 904-05 (1997).

---

[3] Assuming arguendo that this was a legal error on the part of the state habeas court, the district court still erred in finding the state court's final conclusion objectively unreasonable. See Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) ("[AEDPA] compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning."). We need not resolve this issue in order to decide this case.

However, "most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." Id. at 904. A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. Id. at 905. A likelihood or appearance of bias can disqualify a judge as well. Taylor v. Hayes, 418 U.S. 488, 501 (1974). "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." Edwards v. Balisok, 520 U.S. 641, 647 (1997) (citations omitted).

Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has "acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with precision.'" Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 822 (1986) (quoting In re Murchison, 349 U.S. 133, 136 (1955)); see also Ryan v. Clarke, 387 F.3d 785, 793-94 (8th Cir. 2004) ("Application of this vague standard, when viewed through the deferential lens of Williams v. Taylor and the AEDPA, necessarily leaves state courts considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, [relevant Supreme Court precedent]"). Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias. See, e.g., Withrow v. Larkin, 421 U.S. 35, 47 (1975) ("[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."); Bigby v. Dretke, 402 F.3d 551, 560 (5th Cir. 2005) (evaluating a judicial bias claim and noting that because there was no presumption of bias from the defendant's attack on the judge, it was necessary to "examine the record for indications of actual bias on the part of the trial judge") (emphasis added).

11

Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. There are three situations in which the Supreme Court has found presumptive bias:

> (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

Bigby, 402 F.3d at 559 (citing Supreme Court cases).[4]

Buntion posits that the following behaviors show bias on the part of the trial judge: the display of the Roy Bean postcard; the "God's work" comment; the comment that "sooner or later" Buntion would be convicted and executed; Judge Harmon's multiple contacts with the media; his ex parte communications with the DA's office; his removal and reinstatement of defense counsel; refusal to remove jurors exposed to media reports; laughing at a defense witness; not questioning a juror about the sheriff's comment that the juror was "dressed to kill;" the grant and withdrawal of peremptory challenges; and the ex parte interactions with defense counsel. Judge Harmon's comments and actions are certainly inappropriate and indeed atypical for a trial proceeding. However, none of these comments or actions demonstrate that the judge has any of the established bases for presumptive bias. Therefore, in order for Buntion to show

---

[4] See also Aetna, 475 U.S. at 813 (judge standing to gain in related litigation should be disqualified); Ward v. Vill. of Monroeville, 409 U.S. 57 (1972) (adjudicator disqualified for receiving portion of fines); Johnson v. Mississippi, 403 U.S. 212 (1971) (judge who was subject of personal attacks and a lawsuit by defendant could not preside); Mayberry v. Pennsylvania, 400 U.S. 455 (1971) (per curiam) (judge who has been subject of personal attack cannot conduct later contempt proceedings); Murchison, 349 U.S. at 133 (judge disqualified because he acted as both a one-man grand jury and trial judge); Offutt v. United States, 348 U.S. 11 (1954) (judge "embroiled" with counsel disqualified from conducting contempt proceedings against counsel); Tumey v. Ohio, 273 U.S. 510 (1927) (disqualifying a judge because of pecuniary interest).

a due process violation and obtain habeas relief, he must demonstrate that the state court unreasonably determined that Judge Harmon was not actually biased in his case based on clearly established Supreme Court law.

In cases where the defendant is alleging actual bias, opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism. Liteky v. United States, 510 U.S. 540, 555 (1994). Judges do not have to be naive; the evidence at trial may reveal the defendant to be a "thoroughly reprehensible person." Id. at 550-51. However, judicial opinions will support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible. Id. at 555; see also Berger v. United States, 255 U.S. 22, 28 (1921).

Many of Judge Harmon's actions, while revealing lapses in Judge Harmon's judicial temperament, tend to show generalized impertinence and do not provide the kind of evidentiary support needed for an actual bias allegation. See Bracy, 520 U.S. at 909 (stating that the petitioner needs evidence that the trial judge "was actually biased in petitioner's own case" (emphasis in original)). The Supreme Court, in Aetna, recognized that only in the most extreme cases would disqualification on the basis of bias be constitutionally required. 475 U.S. at 820-821. In that case, the Court considered whether an Alabama Supreme Court Justice should have recused himself from a bad-faith failure-to-pay case against an insurance company because of comments he made indicating a "general hostility toward insurance companies that were dilatory in paying claims." Id. at 820. Notwithstanding the Justice's undisputed statements of disdain for insurance companies, the Court concluded that such generalized bias was insufficient to establish a constitutional violation. Id. at 821.

In Liteky, the Supreme Court considered not a Due Process violation, but the statutory effect of the federal recusal statutes and the reach of the extra-judicial source rule. 510 U.S. at 541. The Court noted, however, that

there may be grounds for a bias challenge if "judicial remarks during the course of a trial . . . reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. at 555. As an example of the type of favoritism or antagonism that would support such a challenge, the Court pointed to the following comment made by a district court judge in a WWI espionage case against German-Americans: "'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' [because their] 'hearts are reeking with disloyalty.'" Id. (quoting Berger, 255 U.S. at 28) (alterations in original). While Judge Harmon's comments here are similarly inimical, because Liteky and Berger both rely exclusively on statutory law (neither case even mentions the Due Process Clause), it is not clearly established by Supreme Court precedent that such judicial antagonism unrelated to one of the grounds of presumptive bias is a due process violation.

In Taylor v. Hayes, the Supreme Court noted that "a mounting display of an unfavorable personal attitude toward [the] petitioner" could result in a due process violation. 418 U.S. 488, 501 (1974). In that case, the Court considered whether a judge who had become "embroiled in a running controversy" with an attorney conducting a trial in his court could impartially preside over that attorney's contempt hearing. Id. While the Court concluded that it was improper for that judge to preside over the contempt hearing, id. at 499-500, this holding was based on two grounds not present in the case before this Court. First, the Court concluded that the attorney had been denied due process because the judge denied the attorney the opportunity to defend himself in the contempt hearing. Id. at 498-500. Second, Taylor noted that there were "'marked personal feelings [] present on both sides' and that the marks of 'unseemingly conduct (had) left personal stings.'" Id. at 503 (quoting Mayberry, 400 U.S. at 464). Because Taylor does not explicitly hold that the judge was actually biased and there was other evidence of bias beyond the court's remarks

14

alone, including the judge's sentencing the petitioner to a very high sentence for contempt, this case also does not provide this Court with the support necessary for a finding that the state court's legal determinations were objectively unreasonable.

Here, the postcard that Judge Harmon placed on the bench during jury selection, while displaying a lack of sound judgment on his part, does not demonstrate any actual bias directed at Buntion. Likewise, the comments by the sheriff, the attempted removal of defense counsel, the grant and withdrawal of peremptory challenges, and the media contact also lack any indicia of particularized bias towards Buntion; therefore, these allegations do not support a finding of actual bias under the relevant Supreme Court law.

The most disturbing comments by Judge Harmon were his statements that he was doing "God's work" in seeing the defendant executed and that Buntion would eventually be found guilty. Buntion argues that this mindset unduly influenced the jury in his case. After reviewing the factual findings of the recusal judges as well as the state habeas judge, we are unable to conclude that their findings regarding the nature of these comments were an unreasonable determination of the facts in light of the evidence presented.[5] Moreover,

---

[5] In the first recusal hearing before Judge Ables, Judge Harmon testified to the following with regard to the "God's work" comment:

Q:   . . . At this time, Judge, I'll just ask you to tell this court your recollection of [the God's work] comment under the circumstances of which it was made and what you meant by it.

A:   I absolutely made it. I must admit that I did not remember the circumstances during which it was made. . . . I do remember that it was when Senator Gramm was coming. Court was over, we had finished up with the last juror, and I made this comment as kind of a parting gesture. It was not something I intended to talk to Senator Gramm about . . . . It was when I said it I realized that I should not have said it, 'cause I know that the defendant, not knowing me as [defense counsel] know me perhaps, would not have perceived it to have been entirely tongue-in-cheek. I am embarrassed to admit that I am not a pious person . . . .

Supreme Court case law does not clearly establish bias in a situation such as the one presently before this court; accordingly, it cannot be shown under AEDPA that the state court's determination was objectively unreasonable.

In support of his claim, Buntion contends that the prospect of judicial bias is especially intolerable in death cases as compared to cases involving all other penalties. See Bracy v. Schomig, 286 F.3d 406, 415 (7th Cir. 2002) (citing Spaziano v. Florida, 468 U.S. 447, 468 (1984)). In light of this, he urges this Court to uphold the district court's determination that Judge Harmon's actions and statement are sufficient to constitute actual bias under the circumstances of this case. Citing Webb v. Texas, he argues that even a single instance of judicial impartiality can be sufficient to support a deprivation of due process claim. 409 U.S. 95, 97 (1972). The bedrock principle that "death is different" is always a consideration in the handling of death cases. With this in mind, however, this Court must still work within the framework of AEDPA, which requires federal courts to exercise deferential review of state court decisions.

---

With regard to the that incident, Scardino testified to the following:

Q:  You were present when the statement was made about "doing God's work"?

A:  Yes, sir.

Q:  For example, did you take that as a serious statement or as a tongue-in-cheek statement or somewhere in between. Can you tell me?

A:  Everyone was joking about the goings-on in the courtroom at the time. It wasn't a serious atmosphere, it was one of kidding, and we were discussing visiting the senator as he came to town. And when Judge Harmon made the comment, it was a comment made that he was going to relay that to the senator.

In light of this testimony, Judge Ables concluded that recusal was unnecessary. Similarly, the TCCA on direct appeal concluded that this comment "although certainly inappropriate, was made entirely in jest and did not reflect any genuine bias against the defendant." This sentiment was repeated by the state trial habeas court, whose findings were wholly adopted by the TCCA on habeas appeal.

Similarly, the state courts found that there was no evidence that Judge Harmon actually believed that the defendant was guilty before the start of trial.

The Eighth Circuit, similarly bound by AEDPA, has also confronted death penalty cases that considered judicial bias claims asserted as part of federal habeas litigation. In Ryan, the Eighth Circuit held that under the highly deferential standards of AEDPA, it was not possible to conclude that the state court had unreasonably applied Supreme Court precedent in denying the defendant habeas relief where a judge engaged in an ex parte conference with family members of the murder victims prior to imposing the death penalty. 387 F.3d at 786-87. Similarly, in Jones v. Luebbers, the court declined to reverse the state court's denial of habeas relief where the judge engaged in an ongoing, hostile dispute with defense counsel. 359 F.3d 1005, 1014-15 (8th Cir. 2004). The court explained that the state court's determination could not be considered objectively unreasonable in light of the relevant Supreme Court law. Id.

To be clear, we find Judge Harmon's actions and statements at issue in this case to be very troubling and hardly reflective of the high standards that judges should strive to maintain. The district court's findings and rulings reflect a similar disdain for Judge Harmon's irreverent statements and actions both on and off the bench. Although we might decide this case differently if considering it on direct appeal, given our limited scope of review under AEDPA, we are limited to determining whether the state court's decision was objectively unreasonable. After a careful review of the record, we must therefore conclude that Buntion's allegations do not demonstrate actual bias under established Supreme Court precedent such that this court can hold that the state court decision was unreasonable.

## III. CONCLUSION

Judge Harmon was publicly reprimanded for his behavior in this case by the Texas State Commission on Judicial Conduct. We agree that Judge

17

Harmon's various comments and actions both on and off the bench as previously described in this opinion were highly improper. However, under the highly deferential standard mandated by AEDPA, we cannot conclude that the state habeas court's decision was an unreasonable application of controlling Supreme Court precedent, nor did it involve an unreasonable determination of the facts in light of the evidence presented. This is especially true when the allegations of bias do not relate to pecuniary interests or procedural infirmities but rather, relate to alleged personal animosity. Therefore, we VACATE the district court's grant of conditional habeas relief, and DENY habeas relief.