NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0699n.06

No. 16-2080

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 21, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| QUONSHAY DOUGLAS-RICARDO MASON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DEWAYNE BURTON, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |

Before: CLAY, GIBBONS, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Petitioner Quonshay Douglas-Ricardo Mason appeals the denial of his petition for habeas relief under 28 U.S.C. § 2254. The primary issue presented is whether the state judge presiding over his trial was biased against Mason in violation of Mason's right to due process under the Fourteenth Amendment. Secondarily, Mason argues that the state appellate court erred in holding that the trial judge's statements to the jury that a prosecution witness did not intend a robbery on the date in question constituted harmless error. Mason argues that because the trial judge's error was an instance of judicial bias, it warranted a structural-error analysis, which would have required reversal of the conviction.

We review the district court's denial of Mason's petition de novo, but under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "was

based on an unreasonable determination of the facts in light of the evidence presented."

28 U.S.C. § 2254(d).

Because of the presumption "that public officials have properly discharged their official

duties," *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (internal quotation marks omitted), because

Mason's credible allegations of bias all involve the trial judge's rulings, which "alone almost

never constitute a valid basis for a [finding of] bias or partiality," *Liteky v. United States*,

510 U.S. 540, 555 (1994), and because those allegations do not establish grounds on which to

vacate the state court's decision, we affirm the district court's denial of Mason's habeas petition.

# I
## A. Factual Background

Mason was tried, along with his codefendants, Andre Jackson ("Jackson") and Kainte

Hickey ("Hickey"), for the shooting of Bennie Peterson ("Peterson") and Donteau Dennis

("Dennis"). Mason has not challenged the Michigan appellate court's characterization of the trial

testimony:

> Dennis was the primary prosecution witness at trial. Dennis testified that he was
> at the home of Bennie Peterson when defendant Mason came to the house and
> invited them to participate in a planned robbery of a drug purchaser at the Cabana
> Hotel. Mason told them that the purchaser would be carrying a large sum of
> money. Peterson and Dennis agreed to go, and they left with Mason in Peterson's
> van, with Mason driving. Codefendant Jackson followed them in a Jeep.
> According to Dennis, Jackson positioned himself in the Jeep to prevent Dennis
> from seeing another occupant in the Jeep.
>
> Instead of driving to the hotel, Mason drove to Malcolm Street, where he
> instructed Dennis to purchase drugs from a drug house; informing him that the
> drugs would be used as bait in the planned robbery. As Dennis began walking
> toward the drug house, he noticed that Mason and Jackson had positioned their
> vehicles so that Peterson's van was trapped between the Jeep and another parked
> car. Hickey then approached Dennis, apparently having come from Jackson's
> Jeep. Dennis owed a $50 drug debt to Hickey, who shot Dennis. During this same
> time, Dennis saw Mason and Jackson exit their vehicles carrying guns, and one or
> both of them fired into the van. Peterson died from multiple gunshot wounds.

> Dennis was shot several times, but fled to the backyard of a home nearby and survived.
>
> Detroit Police Officer Frank Senter found Dennis lying in the backyard of that home. Dennis told Senter that Hickey had shot him over a drug debt, but did not say anything about Peterson, Mason, or Jackson. Over the next few days, Sergeant William Anderson interviewed Dennis at the hospital. Dennis reiterated that he was shot by Hickey, and also reported that Mason and Jackson had killed Peterson.

*People v. Hickey*, Nos. 285253, 285254, 2011 WL 801034, at *1 (Mich. Ct. App. Mar. 8, 2011).

### B. Procedural Background

Mason was convicted and sentenced to two concurrent terms of life imprisonment for first-degree murder and conspiracy to commit first-degree murder, a term of 285 months to fifty years for assault with intent to commit murder, and a consecutive term of two years for possession of a firearm while committing a felony.

On direct appeal, the Michigan Court of Appeals affirmed Mason's conviction. *Id*. The Michigan Supreme Court then denied Mason leave to appeal. *People v. Mason*, 800 N.W.2d 88 (Mich. 2011).

Mason next brought a motion requesting relief from judgment in which he alleged numerous constitutional violations. The trial court denied the motion, and the Michigan Court of Appeals denied leave to appeal. *People v. Mason*, No. 310392 (Mich. Ct. App. Nov. 30, 2012). The Michigan Supreme Court again denied Mason leave to appeal. *People v. Mason*, 835 N.W.2d 582 (Mich. 2013).

Mason then sought relief in federal court, filing a habeas petition alleging six errors of constitutional import. The district court denied the petition and granted Mason a certificate of appealability as to a single alleged constitutional deficiency—that "the trial judge's intemperate

and unjust conduct deprived him of a fair trial." *Mason v. Burton*, No. 14-10566, 2016 WL 3626809, at \*1, \*13 (E.D. Mich. July 7, 2016).

## II

"In an appeal from the denial of habeas relief, we review the district court's legal conclusions de novo and its factual findings for clear error." *Scott v. Houk*, 760 F.3d 497, 503 (6th Cir. 2014) (citation omitted). AEDPA allows us to grant habeas relief only when the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d).

In order to successfully allege that the state court's decision satisfied the first of those two disjuncts, a petitioner must show either that the state court "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or that it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "A state court decision involves an 'unreasonable application' of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts of the case before it in an objectively unreasonable manner." *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citation omitted). As the Supreme Court has told us, the "objectively unreasonable" standard established by AEDPA is "difficult to meet," as "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).

Mason alleges two violations of clearly established federal law. First, he alleges that the state court erred in finding that the trial judge's behavior did not evince a bias violative of Mason's due-process rights. Second, he alleges that when the Michigan Court of Appeals found that the trial judge had erred in his comments about a witness, it failed to recognize that the error was structural in nature and therefore incorrectly evaluated the error under the harmless-error standard.[1]

### A. The Trial Judge's Behavior Was Not So Intemperate or Unjust as to Deprive Mason of a Fair Trial

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). And a trial's fairness is irreversibly undermined if it is held "before a judge with . . . actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904–05.

Judicial bias has traditionally been proved by citation to facts external to the judicial proceedings in question, such as a judge's pecuniary or personal interest in the outcome of the proceedings before her. *In re Murchison*, 349 U.S. at 142.

It is possible, however, to infer from "judicial remarks during the course of a trial" that the presiding judge is impermissibly biased if "they reveal such a high degree of favoritism or

---

[1] Mason's brief also alleges that the state court "failed to consider the available record and made unreasonable determinations of fact that are contrary to the existing trial court record." Because he neither alleges that any specific determinations of fact were unreasonable nor explains why they were unreasonable, this argument is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (alteration in original) (citation omitted)).

antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.[2] But this is not an easy standard to meet: "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," nor do "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Id*. at 555–56.

Mason groups the trial judge's behavior into the following five categories, alleging that, taken together, the trial judge's behavior showed impermissible bias.

### 1. Pretrial Remarks

In 1993, *The American Lawyer* ran a series of articles investigating the disparate access to the judicial system afforded to those of differing economic means. One of these articles focused on Detroit criminal courts, where Mason's trial judge was then presiding. He was quoted as saying, "All this stuff about jury trials and due process, what it really amounts to is crooks getting not-guilty verdicts . . . I'm not talking about cases where it's arguable. I'm talking about cases where you have a guilty person walking out the door [because of a misguided jury verdict]. It happens quite a lot." Andy Court, *Rush to Justice*, Am. Law., Jan./Feb. 1993, at 56, 60. (alterations in original).

---

[2] *Liteky* involved the federal recusal statute, 28 U.S.C. § 455(a), not the Fourteenth Amendment. *See id*. at 543. Because this court has evaluated judicial bias claims emanating from the Fourteenth Amendment under the standard delineated in *Liteky*, *see Lyell v. Renico*, 470 F.3d 1177 (6th Cir. 2006); *Alley v. Bell*, 307 F.3d 380 (6th Cir. 2002), because both parties propose operating under the *Liteky* standard, and because Mason is not entitled to relief under the *Liteky* standard, we proceed as if, without so holding, it is "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d), that the *Liteky* standard applies to claims of judicial bias brought under the Fourteenth Amendment. *But see Buntion v. Quarterman*, 524 F.3d 664, 674 (5th Cir. 2008) (". . . .because *Liteky* and *Berger* both rely exclusively on statutory law (neither case even mentions the Due Process Clause), it is not clearly established by Supreme Court precedent that such judicial antagonism unrelated to one of the grounds of presumptive bias is a due process violation.").

## *2. Usurping the Jury's Fact-Finding Role*

During opening statements, counsel for Jackson and Hickey referred to Dennis as a "thug, a thief, and a robber," and as a "stick-up man," respectively. During direct examination, Dennis supported this view of himself when he admitted that he had agreed to accompany Mason to "hit a lick," a reference to robbery.

Later, when the assistant prosecuting attorney was attempting to elicit testimony from a police officer that Dennis did not have a criminal history as an armed robber, Mason's counsel objected. The trial judge, responding to what he believed to be "very inflammatory opening statements," allowed the question, said that "nobody was out committing any armed robbery," and instructed the jury to disregard the allegations made during opening arguments that Dennis was a robber. Later, during his instructions to the jury, the judge again told the jury to ignore the suggestions that Dennis was a robber as "there is no evidence whatsoever that there was any robbery committed or going to be committed" and so "referring to the witness as a robber" was "inflammatory" and "not evidence in this case."

## *3. Interfering with Cross-Examination*

The single purported example of the trial judge's biased interference with cross-examination came after repeated questioning of the officer who found Dennis after Dennis was shot. The officer testified on direct examination that when he found Dennis, Dennis "just said someone named Kainte" shot him over a drug debt. He was then asked whether there was "[a]nything else you did regarding Mr. Dennis, is there anything, any other part of a conversation you've had with him that I didn't ask you about? Did he tell you anything else that I haven't asked you about?" The officer replied, "He told us the type of vehicle and potentially where he believed the person lived."

7

On cross-examination, codefendant's counsel asked, "And when he told you that this subject became angry about the debt and shot him, he didn't tell you know one else was out there, did he?" [sic] The officer replied: "No, he didn't say if anyone was out there or not . . . . He had said several things, most of which I could not comprehend what he was saying. This is what I could understand. This is all that I could understand." When asked whether Dennis told him "he was with some other individuals that started shooting" or whether Dennis told him "anything about his friends starting to shoot someone," the officer answered in the negative.

When defense counsel later asked the officer, "And absolutely nothing that he gave you was indicative of more than one person perpetrating this offense?", the officer replied, "I don't know." When counsel then asked the officer whether Dennis had used the word "they" to describe his assailants, the judge interrupted, saying: "The witness says I don't know. You're asking him to make a conclusion based on what wasn't said." After some back and forth, the judge prohibited counsel from asking whether Dennis had used the word "they," saying: "He's never said anything except the name or a person that shot him. That's all he said. He never went into any other scenario. That's — he doesn't know anything about that." Defense counsel asked anyhow, prompting the following exchange:

Q:      I do not believe the question as to whether or not Donteau Dennis ever used the word "they" in giving information has been asked or answered and that's my question, did Donteau Dennis use the word "they"?
A:      I don't remember.
Q:      Did he use the word "them"?
A:      I don't remember if he used he, she, they, multiple, singular. I don't remember.
Q:      In your training as a police officer and in your experience as a human being have you been taught that there are plural adjectives?

The judge then upheld the assistant prosecuting attorney's objection, saying, "I'm going to sustain the objection. I think the witness has answered the question over and over."

8

*4. Interjecting on the Prosecution's Behalf*

Mason alleges three instances of the trial judge's interjecting to the benefit of the State.[3]

First, when defense counsel asked an evidence technician about the Detroit Police Department's policy regarding informing evidence technicians about the evidence of which the officers are aware, the judge sustained the assistant prosecuting attorney's objection, saying: "I don't think the policy is an issue in this case at all. You can ask this man what he did and what he saw."

Second, after defense counsel had elicited contradictory testimony from Dennis at some length, and was again preparing to impeach Dennis's testimony, the judge interjected, saying: "No. No. We've gone through that ad nauseam. . . . We've gone through all of that. This is questions you've asked and answered. The jury has heard it for two days now. No, we're not gonna go back through that again."

Third, when codefendant's counsel began asking Dennis, "When I asked you about perjury you said the only to time —," the judge interjected, saying: "You can't ask him anything about that. Those are legal conclusions." Counsel then reframed the question to elicit the facts underlying the alleged perjury without asking about perjury per se.

*5. Ruling in the Prosecution's Favor to an Unequal and Unreasonable Degree*

Finally, Mason notes that while the State raised objections twenty-one times, the State was overruled only twice, and that while the defendants raised objections eighteen times, only two of those objections were sustained.

---

[3] He also alleges a fourth instance in which "the trial court assumed the role of prosecutor to excuse [a *Brady*] violation." A review of the record suggests that the trial court interjected to call a recess to allow Mason's trial counsel time to review a document he had just received, not to excuse a *Brady* violation.

\*\*\*

Assuming they were accurately reported, the trial judge's remarks concerning due process, made more than twenty years ago and not in a trial context, were intemperate. But they do not suggest a bias, against either defendants generally or Mason specifically, that rises to a level permitting habeas relief. The reported remarks perhaps suggest a disagreement with Blackstone's famous maxim, but they evince no propensity to favor the prosecution. *See generally* 4 William Blackstone, Commentaries \*358 ("[T]he law holds that it is better that ten guilty persons escape, than that one innocent suffer."); *In re Winship*, 397 U.S. 358, 372 (1970) ("I view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.") (Harlan, J., concurring).

Nor do any of the actions taken by the judge during trial warrant habeas relief. As an initial matter, because "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" from claims of judicial bias, and because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky*, 510 U.S. at 555–56, we doubt that Mason's right to a fair trial was violated.

Mason's strongest argument concerns the trial judge's instructing the jury that no robbery was intended the day of the murder and to ignore the defense counsels' assertions during opening statements that Dennis was a robber. The Michigan Court of Appeals found this to be improper, as Dennis had admitted to participating in the day's events because he believed he was to participate in a robbery. But a single improper evidentiary ruling generally does not a constitutional violation make, and this does not seem to us to be one of the rare exceptions in

10

which it does. As the state court said in rejecting Mason's habeas appeal, the "gist of the instruction was not an effort to influence the jury against [the defendants] or to demonstrate partiality for Dennis, but rather to address what the trial court believed was the defense attorney's characterization of Dennis during opening statement as a thug, thief, robber, and 'stick-up man.'" *People v. Hickey*, Nos. 285253, 285254, 2011 WL 801039, at *7 (Mich Ct. App. Mar. 8, 2011). In so doing, the trial judge did not deprecate either Mason, his attorney, or his theory of the case, and we do not think that these comments "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.

The trial judge's other rulings, which Mason grants were correct applications of the law, are less indicative of bias, as they were merely attempts at preventing repetitive or otherwise impermissible questioning. That the trial judge made three of these rulings on a *sua sponte* basis is of no moment, for it is well established that a trial court judge "may interject himself into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation," and we have been clear that there is no error where the trial court's "comments can be construed as attempts to keep the parties focused on the issues related specifically to the crime charged and to prevent counsel from asking repetitive questions." *United States v. Powers*, 500 F.3d 500, 511–12 (6th Cir. 2007) (citation omitted). Nor is the ratio of judicial interjections favoring the prosecution to those favoring the defense of any import standing alone. *See generally United States v. Tilton*, 714 F.2d 642, 645 (6th Cir. 1983) ("A trial court's intrusions are not to be measured merely in terms of volume, but are to be viewed with an eye toward their tendency to influence the verdict in the particular case. Hence an appellate court is also to consider the tenor of the interruptions, the extent to which they are

11

directed to one side more than the other, the presence of curative instructions and the nature of the evidence presented at trial.").

We must defer to the state court's rejection of Mason's judicial misconduct claim unless it was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. The state court's determination that no constitutional violation occurred is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102–03.

In *Liteky*, the Supreme Court gave us an example of judicial conduct that revealed "such a high degree of favoritism or antagonism as to make fair judgment impossible"—namely, saying at the trial of German-American defendants, "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans because their hearts are reeking with disloyalty." 510 U.S. at 555–56. (alteration in original) (citation omitted).

The judicial activity in this case is not so close to that described in *Liteky* that there could be no fairminded disagreement as to whether the state court erred in holding that Mason's right to a fair trial was not violated.[4]

**B. The State Court Did Not Err in Applying Harmless-Error Review**

The state court found that the trial judge erred in telling the jury to disregard the allegations that Dennis was a robber, but then held that this error had not pierced the veil of judicial impartiality or otherwise affected Mason's substantial rights. Mason argues that because

---

[4] Mason points to only two cases in which we have found judicial bias, but neither is apposite. *Rocha v. Great American Insurance Co.* involved a federal civil case in which the trial judge engaged in "hundreds" of instances of "prejudicial comments and biased interrogation." 850 F.2d 1095, 1099 (6th Cir. 1988). *Lyell v. Renico* involved non-AEDPA habeas review of a state trial judge who called the defendant's attorney "an actor, a child, silly and a smart aleck," issued a contempt order against defense counsel in front of the jury, "stated or implied her disapproval of [the defendant]'s theory of the case," and encouraged a witness to provide information even after the prosecutor explained that it was inadmissible hearsay. 470 F.3d 1177, 1187 (6th Cir. 2006).

12

the trial judge's error was an instance of judicial bias, it was a structural error and therefore could not be harmless. *See Chapman v. California*, 386 U.S. 18, 23 (1967) (stating that the right against coerced confession, the right to counsel, and the right to an impartial judge were examples of constitutional rights "so basic to a fair trial that their infraction can never be treated as harmless error").

Because Mason did not raise this issue before the district court and was not issued a certificate of appealability as to it, we lack jurisdiction to hear this argument. *See* 28 U.S.C. § 2253(c) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken . . . ."); *see also Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1072 (6th Cir. 1993) ("This court does not normally address issues raised for the first time on appeal."). Regardless, Mason mischaracterizes the state appellate court, which did not find that this was a harmless instance of judicial bias, but instead found that this was a harmless error that was not an instance of judicial bias. And as discussed above, Mason is unable to show under the standard governing federal habeas review of a state court's decision that this judicial behavior was indicative of bias. Therefore, we find no basis for granting habeas relief based on the state appellate court's decision not to apply a structural-error analysis.

## III

For the above reasons, the decision of the district court is **AFFIRMED**.